Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID SCHWARTZ,<br><br>    Plaintiff,<br><br>    v.<br><br>EXTENDED STAY AMERICA, INC., ESH HOSPITALITY, INC., BRUCE N. HAASE, DOUGLAS G. GEOGA, ELLEN KESZLER, JODIE W. MCLEAN, KAPILA K. ANAND, RICHARD F. WALLMAN, THOMAS F. O'TOOLE, LISA PALMER, NEIL T. BROWN, STEVEN E. KENT, and SIMON M. TURNER,<br><br>    Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff David Schwartz ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.      This is an action against Extended Stay America, Inc. ("Extended Stay" or the "Company") and the Company's controlled subsidiary, ESH Hospitality, Inc. ("ESH"), and their

respective Boards of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Extended Stay and ESH by Eagle Parent Holdings L.P., a joint venture of affiliates of Blackstone Real Estate Partners IX L.P. ("Blackstone") and Starwood Distressed Opportunity Fund XII Global, L.P. ("Starwood").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company has hotels in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of the paired shares of Extended Stay and ESH.

7. Defendant Extended Stay, together with its subsidiaries, owns, operates, develops, and manages hotels in the United States. The Company is incorporated in Delaware.

8. Defendant ESH is the Company's controlled subsidiary. ESH is incorporated in Delaware. Extended Stay's and ESH's paired shares trade on the NASDAQ under the ticker symbol, "STAY."

9. Defendant Bruce N. Haase ("Haase") is President, Chief Executive Officer ("CEO"), and a director of Extended Stay. Defendant Haase is also President, CEO, and a director of ESH.

10. Defendant Douglas G. Geoga ("Geoga") is Chairman of the Board of Extended Stay. Defendant Geoga is also Chairman of the Board of ESH.

11. Defendant Ellen Keszler ("Keszler") is a director of Extended Stay.

12. Defendant Jodie W. McLean ("McLean") is a director of Extended Stay.

13. Defendant Kapila K. Anand ("Anand") is a director of Extended Stay. Defendant Anand is also a director of ESH.

14. Defendant Richard F. Wallman ("Wallman") is a director of Extended Stay.

15. Defendant Thomas F. O'Toole ("O'Toole") is a director of Extended Stay.

16. Defendant Lisa Palmer ("Palmer") is a director of ESH.

17. Defendant Neil T. Brown ("Brown") is a director of ESH.

18. Defendant Steven E. Kent ("Kent") is a director of ESH.

19. Defendant Simon M. Turner ("Turner") is a director of ESH.

20.     Defendants Haase, Geoga, Keszler, McLean, Anand, Wallman, O'Toole, Palmer, Brown, Kent, and Turner are collectively referred to herein as the "Individual Defendants."

21.     Defendants Extended Stay and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

22.     On March 15, 2021, Extended Stay and ESH announced that they had signed a definitive agreement to be acquired by a 50/50 joint venture between funds managed by Blackstone and Starwood for $19.50 per paired share in an all-cash transaction. The press release announcing the Proposed Transaction states, in pertinent part:

**Blackstone and Starwood Capital Group to Acquire Extended Stay America**

March 15, 2021 08:00 ET | Source: Extended Stay America, Inc.

CHARLOTTE, N.C., March 15, 2021 (GLOBE NEWSWIRE) -- Extended Stay America, Inc. ("ESA") and its paired-share REIT, ESH Hospitality, Inc. ("ESH" and together with ESA, the "Company") (NASDAQ: STAY) announced today that it has signed a definitive agreement to be acquired by a 50/50 joint venture between funds managed by Blackstone Real Estate Partners ("Blackstone") and Starwood Capital Group ("Starwood Capital") for $19.50 per paired share in an all-cash transaction valued at approximately $6 billion.

*     *     *

Bruce Haase, CEO and President of the Company said, "We are pleased to announce this transaction with Blackstone and Starwood Capital, two of the most experienced investors in the hospitality space with impressive track records of building value in a wide variety of real estate assets, and we look forward to this partnership and continued growth." He added, "The Boards and senior management are especially grateful to the excellent team of leaders and associates who have made this company such a leader in the lodging industry and we are confident in the Company's continued success under private ownership."

Tyler Henritze, head of US acquisitions for Blackstone Real Estate commented, "Travel and leisure is one of Blackstone's highest conviction investment themes, and we have confidence in the extended stay model. We helped create this company

4

nearly twenty years ago, and believe our expertise puts us in a unique position to add long-term value."

Barry Sternlicht, CEO of Starwood Capital, added, "Extended Stay has demonstrated resilience over the past year despite persistent challenges due to government lockdowns and travel restrictions. We are excited about the Company's growth opportunity as restrictions ease and we're confident that, in partnership with Blackstone and the Company, our team has the right experience to drive continued success."

The transaction has been unanimously approved by ESA's Board of Directors and has also been approved by ESH's Board of Directors. Completion of the transaction, which is expected to occur in the second quarter of 2021, is contingent upon customary closing conditions, including approval of the Company's stockholders. The transaction is not contingent on receipt of financing. In connection with the transaction, an affiliate of Starwood Capital, which owns approximately 9.4% of Company's outstanding paired shares, has entered into a support agreement whereby it has agreed to vote its shares in favor of the transaction.

The Company does not expect to pay its regular quarterly distribution during the pendency of the transaction except for the previously declared $0.09 distribution on March 26, 2021. However, under the terms of the merger agreement, the acquiror may request that ESA pay a special distribution immediately prior to the closing of up to $1.75 per paired share, in which case the cash consideration paid in the merger will be reduced by the amount of the distribution.

Goldman Sachs & Co. LLC is serving as financial advisor to the Company and Fried, Frank, Harris, Shriver & Jacobson LLP is acting as legal counsel.

J.P. Morgan and Citigroup Global Markets Inc. are acting as financial advisors and providing debt financing to Blackstone and Starwood. Simpson Thacher & Bartlett LLP is acting as legal advisor to Blackstone, and Kirkland & Ellis LLP is acting as legal advisor to Starwood Capital.

*   *   *

**About the Company**

Extended Stay America, Inc. ("ESA") and its brand Extended Stay America® is the leading brand in the mid-priced extended stay segment in the U.S. with 650 hotels. ESA's subsidiary, ESH Hospitality, Inc., is the largest lodging REIT in North America by unit and room count, with 564 hotels and approximately 62,500 rooms in the U.S. ESA also franchises an additional 86 Extended Stay America® hotels. Visit www.esa.com for more information.

**About Starwood Capital Group**

Starwood Capital Group is a private investment firm with a core focus on global real estate, energy infrastructure and oil & gas. The Firm and its affiliates maintain 16 offices in seven countries around the world, and currently have approximately 4,100 employees. Since its inception in 1991, Starwood Capital Group has raised over $55 billion of equity capital, and currently has in excess of $75 billion of assets under management. Through a series of comingled opportunity funds and Starwood Real Estate Income Trust, Inc. (SREIT), a non-listed REIT, the Firm has invested in virtually every category of real estate on a global basis, opportunistically shifting asset classes, geographies and positions in the capital stack as it perceives risk/reward dynamics to be evolving. Starwood Capital also manages Starwood Property Trust (NYSE: STWD), the largest commercial mortgage real estate investment trust in the United States, which has successfully deployed over $63 billion of capital since inception and manages a portfolio of over $17 billion across debt and equity investments. Over the past 29 years, Starwood Capital Group and its affiliates have successfully executed an investment strategy that involves building enterprises in both the private and public markets. Additional information can be found at starwoodcapital.com.

**About Blackstone Real Estate**

Blackstone is a global leader in real estate investing. Blackstone's real estate business was founded in 1991 and has $187 billion of investor capital under management. Blackstone is one of the largest property owners in the world, owning and operating assets across every major geography and sector, including logistics, multifamily and single-family housing, office, hospitality and retail. Our opportunistic funds seek to acquire undermanaged, well-located assets across the world. Blackstone's Core+ strategy invests in substantially stabilized real estate globally through regional open-ended funds focused on high-quality assets and Blackstone Real Estate Income Trust, Inc. (BREIT), a non-listed REIT that invests in U.S. income-generating assets. Blackstone Real Estate also operates one of the leading global real estate debt businesses, providing comprehensive financing solutions across the capital structure and risk spectrum, including management of Blackstone Mortgage Trust (NYSE: BXMT).

23. On April 13, 2021, the Company filed a Schedule 14A Preliminary Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

24. The Proxy Statement, which recommends that Extended Stay shareholders vote in

favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Extended Stay's and ESH's financial projections; and (ii) the financial analyses performed by Extended Stay's and ESH's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in connection with its fairness opinion.

25. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Reasons for the Mergers; (ii) Recommendation of the Company Board; (iii) Recommendation of the Hospitality Board; (iv) Opinion of the Paired Entities' Financial Advisor; and (v) Forward-Looking Financial Information.

26. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Extended Stay shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning Extended Stay's and ESH's Financial Projections**

27. The Proxy Statement omits material information concerning Extended Stay's and ESH's financial projections.

28. The Proxy Statement provides that, "in connection with the evaluation of a possible transaction, our management prepared in February 2021 and provided to the Boards projections for the Paired Entities on a consolidated basis for 2021 through 2025 reflecting management's business plan" (the "Extended Stay and ESH financial projections"). The Extended Stay and ESH financial projections were provided to Goldman Sachs and utilized by Goldman Sachs in connection with its fairness opinion and related financial analyses. The Extended Stay and ESH

7

financial projections were provided to Blackstone and Starwood in connection with their evaluations of the Proposed Transaction.

29. With respect to the Extended Stay and ESH financial projections, the Proxy Statement fails to disclose: (1) all line items underlying (i) Adjusted EBITDA, (ii) Unlevered Free Cash Flow, and (iii) Net Debt; (2) Extended Stay's and ESH's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

30. The disclosure of this information is material because it would provide the Company's and ESH's shareholders with a basis to project the future financial performance of the Company and ESH and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company and ESH. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's and ESH's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

31. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R.

8

§ 244.100.[1]

32. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's and ESH's shareholders.

### 2. Material Omissions Concerning Goldman Sachs' Analyses

33. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Goldman Sachs.

34. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Premia and Multiples*": (1) the total number of fully diluted paired shares outstanding as of March 14, 2021; and (2) the Paired Entities' net debt as of December 31, 2020.

35. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Present Value of Future Share Price Analysis*": (1) the individual inputs and assumptions underlying the (i) illustrative range of multiples of 9.0x to 11.0x, and (ii) illustrative discount rate of 9.56%; (2) the amount of the Paired Entities' projected net debt as of December 31, 2021, 2022, 2023 and 2024, respectively; and (3) the number of fully diluted paired shares as of December 31, 2021, 2022, 2023 and 2024, respectively.

36. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 7.00% to 8.00%, (ii) perpetuity growth rates ranging

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Apr. 20, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

from 1.00% to 1.50%, and (iii) EBITDA multiples ranging from 8.4x to 10.8x; (2) all line items underlying the unlevered free cash flow for the Paired Entities for the years 2021 through 2025; (3) the range of illustrative terminal values for the Paired Entities; (4) net debt; and (5) the number of fully diluted outstanding shares of the Paired Entities as of March 14, 2021.

37. With respect to Goldman Sachs' "*Premia Analysis*," the Proxy Statement fails to disclose each transaction and the premiums paid therein.

38. The valuation methods, underlying assumptions, and key inputs used by Goldman Sachs in rendering its purported fairness opinion must be fairly disclosed to Extended Stay and ESH shareholders. The description of Goldman Sachs' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Extended Stay and ESH shareholders are unable to fully understand Goldman Sachs' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's and ESH's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

39. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

41. Each of the Individual Defendants, by virtue of his/her positions within the Company and ESH as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

42. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

43. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

44. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

45. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46. The Individual Defendants acted as control persons of the Company and ESH within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and ESH and participation in and/or awareness of the Company's and/or ESH's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did

influence and control, directly or indirectly, the decision-making of the Company and/or ESH, including the content and dissemination of the false and misleading Proxy Statement.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company and/or ESH which were or had become materially false or misleading.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company and/or ESH, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

49. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

51.  As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's and ESH's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.  Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's and ESH's shareholders;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.  Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.  Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 20, 2021

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*